Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Jeremy C. Baron
Assistant Federal Public Defender
District of Columbia Bar No. 1021801
jeremy_baron@fd.org
Heidi Ojeda
Assistant Federal Public Defender
Nevada Bar No. 12223
heidi_ojeda@fd.org
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Sean A. McClelland
Assistant Federal Public Defender
Nevada State Bar No. 16581
sean_mcclelland@fd.org
200 S. Virginia St. Suite 340
Reno, Nevada 89501

Attorneys for Shamar Tyrell Garcia

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:25-cr-230-RFB-BNW |
| Plaintiff, | **Motion to dismiss indictment or disqualify U.S. Attorney's office**[1] |
| v. | |
| Shamar Tyrell Garcia, | |
| Defendant. | |

[1] This motion is timely filed.  *See* ECF No. 9; *see generally* Local Criminal Rule 12-1(a).

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Factual Background .................................................................................... 2

I.     The administration appoints Sigal Chattah on an interim basis, then
       purports to direct her to serve on an acting basis. ............................. 2

II.    The administration has pursued similar maneuvers in other districts. .......... 4

       A.     The District of New Jersey........................................................ 4

       B.     The Northern District of New York........................................... 6

       C.     The Central District of California. ........................................... 7

       D.     The District of New Mexico..................................................... 8

III.   Under Ms. Chattah's leadership, the government secures the instant
       indictment. ........................................................................................ 9

Legal Background ...................................................................................... 10

I.     5 U.S.C. § 3345 et seq. ...................................................................... 10

II.    28 U.S.C. § 546. ................................................................................. 12

Argument ................................................................................................... 13

I.     Ms. Chattah is not properly serving as U.S. Attorney. ..................... 15

       A.     Ms. Chattah is not a qualified acting officer under 5 U.S.C.
              § 3345. ..................................................................................... 15

              1.     Ms. Chattah is ineligible to fill the vacancy caused by
                     Mr. Frierson's resignation. ............................................ 15

                     a.     Ms. Chattah was not an already-in-place first
                            assistant. ............................................................... 15

                     b.     Ms. Chattah was not Senate-confirmed for another
                            office....................................................................... 15

                     c.     Ms. Chattah was not an already-in-place senior
                            officer in the relevant office................................ 15

i

2.   The July vacancy is not a qualifying vacancy. ............................ 18

3.   There is no indication the President made the designation directly. .................................................... 24

B.   Even if Ms. Chattah were qualified under 5 U.S.C. § 3345, the controlling time limit is from 28 U.S.C. § 546...................................... 25

1.   A non-confirmed U.S. Attorney appointed under Section 546 cannot serve more than 120 days.............................. 26

2.   A contrary reading would render Section 546(d) superfluous. ... 29

3.   The Court should enforce Section 546's 120-day limit to prevent the "mischief" underlying its enactment...................... 33

C.   The Appointments Clause requires an interim or acting U.S. Attorney to be Senate-confirmed........................................ 38

1.   U.S. Attorneys are principal officers requiring Senate confirmation.................................................. 38

2.   Temporary U.S. Attorneys serving lengthy terms are principal officers requiring Senate confirmation. ..................... 41

II.   The appropriate remedy is to dismiss the indictment and for the judges of this district to select an interim U.S. Attorney................................ 43

A.   The Court should dismiss the indictment or, at a minimum, disqualify Ms. Chattah........................................... 43

B.   The judges of this district should select an interim U.S. Attorney. .................................................. 48

Conclusion ...................................................... 50

# TABLE OF AUTHORITIES

**Cases**

*Arizona State Bd. For Charter Sch. v. U.S. Dep't of Educ.*,
464 F.3d 1003 (9th Cir. 2006) .................................................................... 21

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................ 34

*Bond v. United States*, 572 U.S. 844 (2014) ............................................ 33

*Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991) ............................... 28

*Corley v. United States*, 556 U.S. 303 (2009) ............................ 29, 30, 32

*Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519 (2009) .................... 31

*Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*,
139 F.3d 203 (D.C. Cir. 1998) .................................................. 19, 20, 22

*Edmond v. United States*, 520 U.S. 651 (1997) ................................. 38, 39

*Freytag v. C.I.R.*, 501 U.S. 868 (1991) .................................................... 23

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
107 F.4th 1064 (9th Cir. 2024) .................................... 11, 19, 46

*Gorecki v. Comm'r, Social Security Admin.*, 143 F.4th 1295 (11th Cir. 2025) ........ 32

*Hooks v. Kitsap Tenant Support Services, Inc.*,
816 F.3d 550 (9th Cir. 2016) .................................... 10, 26, 47

*In re Fairfield Sentry Ltd.*, __ F.4th __, 2025 WL 2218836 (2d Cir. 2025) ............. 34

*In re Persico*, 522 F.2d 41 (2d Cir. 1975) ................................................ 24

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ................................................ 40

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .......................................... 23

*Jooce v. FDA*, 981 F.3d 26 (D.C. Cir. 2020) .......................................... 19

*L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) ......................... 16

*Lucia v. SEC*, 585 U.S. 237 (2018) ......................................................... 43

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) ..................... 41

*Morrison v. Olson*, 487 U.S. 654 (1988) ..................................................... 38

*Morton v. Mancari*, 417 U.S. 535 (1974) ................................................ 27

*Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2023) ............................. 28

*Myers v. United States*, 272 U.S. 52 (1926)............................................ 38

*Nadler v. Mann*, 951 F.2d 301 (11th Cir. 1992) .................................... 39

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) ..................... 34

*NLRB v. Hearst Pubs.*, 322 U.S. 111 (1944) .......................................... 34

*NLRB v. SW General, Inc.*, 580 U.S. 288 (2017) .......................... 10, 43, 47

*Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*,
    732 F. Supp. 1183 (D.D.C. 1990) ....................................................... 19

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989) ............................. 21

*Pulsifer v. United States*, 601 U.S. 124 (2024) ...................................... 30

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) ..... 27, 28

*Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562 (6th Cir. 2022) .................. 42

*Stein v. Kaiser Found. Health Plan, Inc.*,
    115 F.4th 1244 (9th Cir. 2024) (en banc) ........................................... 45

*SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015) .................. 16, 47

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ........................... 29, 30, 32, 34

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) .............. 24, 32

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) ............................. 40, 41

*United States v. Bormes*, 568 U.S. 6 (2012) ......................................... 27

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) ................... 45, 46, 47

*United States v. Eaton*, 169 U.S. 331 (1898) .................................. 41, 42

*United States v. Estate of Romani*, 523 U.S. 517 (1998) ......................... 28

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) .............. 12, 40, 41, 45

*United States v. Giraud*, 2025 WL 2196794 (D.N.J. Aug. 1, 2025) ................ 4, 5, 47

*United States v. Giraud*, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ................ *passim*

iv

*United States v. Hansen*, 599 U.S. 762 (2023) ........................................................ 23

*United States v. Harmon*, 833 F.3d 1199 (9th Cir. 2016) ...................................... 46

*United States v. Hernandez-Garcia*, 44 F.4th 1157 (9th Cir. 2022) ...................... 28

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ............................................. 47

*United States v. Huston*, 28 F.2d 451 (N.D. Ohio 1928) ........................................ 46

*United States v. Peralta-Ramirez*, 83 F. Supp. 2d 263 (D.P.R. 2000) ................... 47

*United States v. Plesinski*, 912 F.2d 1033 (9th Cir. 1990) ............................... 46, 47

*United States v. Rosenthal*, 121 F. 862 ................................................................... 46

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ............................ 44

*United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc) ............... 12

*United States v. Williams*, 65 F.R.D. 422 (W.D. Mo. 1974) .................................... 46

**Constitutional Provision, Statutes, and Regulations**

U.S. Const. art. II, § 2, cl. 2 ..................................................................................... 38

5 U.S.C. § 3345 ................................................................................................*passim*

5 U.S.C. § 3348 ......................................................................................................... 46

18 U.S.C. § 3142 ....................................................................................................... 48

28 U.S.C. § 515 .................................................................................................... 5, 24

28 U.S.C. § 541 ......................................................................................................... 39

28 U.S.C. § 546 ...................................................................................................*passim*

28 U.S.C. § 547 .............................................................................................. 39, 44, 45

28 U.S.C. § 509, 510 .................................................................................................... 5

28 U.S.C. § 510 ............................................................................................................ 5

29 U.S.C. § 153 ......................................................................................................... 26

28 C.F.R. § 0.137 ........................................................................................................ 2

U.S. Dep't of Just., Just. Manual §§ 4-1.300, 9-2.001 ..................................... 40, 44

**Legislative Materials**

153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) ................................... 35

153 Cong. Rec. S1993-01 (daily ed. Feb. 15, 2007) ................................... 35

153 Cong. Rec. S15227-01 (daily ed. Dec. 12, 2007) ................................. 37

Act of Mar. 3, 1863, 12 Stat. 768 (1863) ................................................ 31

Federal Vacancies Reform Act, Pub. L. No. 105-277 (1998) ..................... 28

H.R. Rep. No. 110-58 (2007) .......................................................... 31, 34

S. 214, 110th Cong. (2007) .................................................................. 36

S. Rep. No. 105-250 (1998) ................................................................ 16

Preserving United States Attorney Independence Act of 2007,
    Pub. L. No. 110-34 ............................................................... 13, 28

Statement of Senator Patrick Leahy to the Senate Judiciary Committee,
    2008 WL 189313 (Jan. 22, 2008) ...................................................... 37

USA PATRIOT Improvement and Reauthorization Act of 2005,
    Pub. L. No. 109-177 (2005) ............................................................ 34

**Law Review Articles, Dictionaries**

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L. J. 967 (2021) ........................ 33, 34

Bruce A. Green & Rebecca Roiphe, *Depoliticizing Federal Prosecution*,
    100 Denv. L. Rev. 817 (2023) ........................................................... 31

Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of
    USCIS* (Sept. 9, 2019) ................................................................. 16

"Resign," Black's Law Dictionary (12th ed. 2024) ................................... 20

Ross E. Winter, *Inter-Branch Appointments After the Independent Counsel*,
    86 Minn. L. Rev. 363 (2001) ........................................................... 32

**News Articles, Press Releases, etc.**

*Acting U.S. Attorney Bilal A. Essayli*, U.S. Dep't of Justice (July 30, 2025)............... 8

*Announcements: United States Attorney for the Northern District of New York*
(N.D.N.Y. July 14, 2025)................................................................................. 7

*Archives: Acting U.S. Attorney Daniel Hanlon*, U.S. Dep't of Justice
(Mar. 17, 2025) ............................................................................................. 6

*Attorney General Pamela Bondi Appoints John A. Sarcone III as*
*U.S. Attorney*, U.S. Dep't of Justice (Mar. 4, 2025) .................................. 6

Isabella Aldrete, *Trump extends Sigal Chattah's term as US attorney . . . ,*
The Nevada Independent (July 29, 2025) .................................................. 3

*Bilal A. Essayli Sworn in as United States Attorney . . . ,*
U.S. Dep't of Justice (Apr. 2, 2025) ......................................................... 7

Gabby Birenbaum, *Trump names GOP attorney Sigal Chattah as interim*
*U.S. attorney for Nevada*, The Nevada Independent (Mar. 28, 2025) ................... 2

Noble Brigham, *Chattah named Nevada's next interim US attorney . . . ,*
Las Vegas Review Journal (Mar. 28, 2025) ............................................. 2

Noble Brigham, *Could Nevada's top federal prosecutor face challenges after*
*NJ ruling?*, Las Vegas Review Journal (Aug. 22, 2025).......................... 3

*Former United States Attorneys*, U.S. Dep't of Justice (Apr. 2, 2025) ...................... 7

*Carla B. Freedman is Sworn in as United States Attorney for the Northern*
*District of New York*, U.S. Dep't of Justice (Oct. 8, 2021) ...................... 6

*Carla Freedman Concludes Her Service as United States Attorney,*
U.S. Dep't of Justice (Feb. 17, 2025) ...................................................... 6

Letters from John A. Sarcone III to Chief Judge Brenda K. Sannes and
from Jewel Campos to John A. Sarcone III (July 14, 2025) .................... 7

*Meet the Acting U.S. Attorney*, U.S. Dep't of Justice (July 30, 2025) ....................... 3

Brittny Mejia et al., *Trump administration maneuvers to keep Essayli*
*as L.A.'s top federal prosecutor*, L.A. Times (July 29, 2025)................... 8

Mark Robison, *Trump appoints Chattah acting US attorney for Nevada . . .*,
Reno Gazette Journal (July 30, 2025) ............................................................ 3

Steve Sebelius, *Sigal Chattah appointed as acting U.S. attorney . . .*,
KTNV Las Vegas (July 30, 2025) ................................................................. 3

*Sigal Chattah Appointed Interim United States Attorney for the
District of Nevada*, U.S. Dep't of Justice (Apr. 1, 2025) ......................... 2

*Statement of U.S. Attorney Geoffrey S. Berman on Appointment by Chief Judge*,
U.S. Dep't of Justice (Apr. 25, 2018) ...................................................... 32

*Statement Regarding United States Attorney Ryan Ellison's Acting
Appointment*, U.S. Dep't of Justice (Aug. 15, 2025) ................................. 8

*Sue Fahami Named Acting United States Attorney for the District of Nevada*,
U.S. Dep't of Justice (Jan. 21, 2025) ......................................................... 2

*U.S. Attorney Alexander Uballez to Step Down . . .*,
U.S. Dep't of Justice (Feb. 17, 2025) ......................................................... 8

*United States Attorney Jason M. Frierson Announces Resignation*,
Dep't of Justice (Dec. 30, 2024) ................................................................ 2

# INTRODUCTION

The administration appointed Sigal Chattah as the interim U.S. Attorney for the District of Nevada on or about March 28, 2025. Under 28 U.S.C. § 546(c)(2), she was authorized to serve for 120 days as interim U.S. Attorney. That period expired on or about July 26, 2025. The judges of this district now have authority to appoint a new interim U.S. Attorney until the Senate confirms a permanent nominee. 28 U.S.C. § 546(d).

On or about July 28, 2025, the administration pursued personnel maneuvers involving Ms. Chattah and purported to direct her to serve as acting U.S. Attorney under 5 U.S.C. § 3345 et seq. But no statute authorizes the administration to extend her temporary appointment. Section 3345 does not permit Ms. Chattah to serve as an acting officer under the circumstances at issue here. Even if it did, the controlling time limit comes from Section 546, which applies to individuals appointed as interim U.S. Attorneys, not Section 3345 et seq., which are general statutes. Were there any doubt, the statutes should be read to avoid serious constitutional concerns regarding the Appointments Clause. The Court should determine Ms. Chattah's conduct as acting U.S. Attorney is "void." *United States v. Giraud*, __ F. Supp. 3d __, 2025 WL 2416737, at *27 (D.N.J. Aug. 21, 2025).

The Court should dismiss the indictment; at a minimum, it should disqualify Ms. Chattah from this prosecution, as well as attorneys operating under her direction; and the judges of this district should exercise their authority to appoint a proper interim U.S. Attorney under Section 546(d).

1

## FACTUAL BACKGROUND

### I. The administration appoints Sigal Chattah on an interim basis, then purports to direct her to serve on an acting basis.

Jason M. Frierson was the last Senate-confirmed U.S. Attorney for the District of Nevada.[2]  Mr. Frierson resigned on January 17, 2025.  *Id.*  On or about January 21, Sue Fahami—who was serving as the first assistant, *see* 28 C.F.R. § 0.137(b)—began serving as the acting U.S. Attorney under 5 U.S.C. § 3345(a)(1).[3]

A few months later, the administration appointed Sigal Chattah as interim U.S. Attorney under 28 U.S.C. § 546.  On information and belief, the appointment occurred on March 28, 2025.[4]  She was sworn in April 1.[5]

On information and belief, on or about July 28, 2025, the administration pursued a series of personnel maneuvers and ultimately purported to direct

---

[2] *See United States Attorney Jason M. Frierson Announces Resignation*, U.S. Dep't of Justice (Dec. 30, 2024), https://www.justice.gov/usao-nv/pr/united-states-attorney-jason-m-frierson-announces-resignation.

[3] *See Sue Fahami Named Acting United States Attorney for the District of Nevada*, U.S. Dep't of Justice (Jan. 21, 2025), https://www.justice.gov/usao-nv/pr/sue-fahami-named-acting-united-states-attorney-district-nevada.

[4] *See* Gabby Birenbaum, *Trump names GOP attorney Sigal Chattah as interim U.S. attorney for Nevada*, The Nevada Independent (Mar. 28, 2025), https://thenevadaindependent.com/article/trump-names-gop-attorney-sigal-chattah-as-interim-u-s-attorney-for-nevada; Noble Brigham, *Chattah named Nevada's next interim US attorney* . . . , Las Vegas Review Journal (Mar. 28, 2025), https://www.reviewjournal.com/news/politics-and-government/nevada/las-vegas-lawyer-rnc-committeewoman-will-be-next-interim-us-attorney-3343694/.

[5] *See Sigal Chattah Appointed Interim United States Attorney for the District of Nevada*, U.S. Dep't of Justice (Apr. 1, 2025), https://www.justice.gov/usao-nv/pr/sigal-chattah-appointed-interim-united-states-attorney-district-nevada.

Ms. Chattah to serve as acting U.S. Attorney for the district under Section 3345.[6] The defense is unaware of the details of the specific steps that led to this result. Some reporting has indicated Ms. Chattah purported to submit her resignation as interim U.S. Attorney to the administration on or about July 28.[7]  The Department of Justice's website indicates Ms. Chattah was contemporaneously appointed as special attorney to the Attorney General.[8]  Some reporting suggests Ms. Chattah was named first assistant U.S. Attorney for the district,[9] but the defense has not confirmed that reporting, and on information and belief Ms. Fahami has consistently served in the first assistant role during the relevant periods.  The defense is likewise unaware of President Trump having nominated Ms. Chattah for the permanent position or having personally directed Ms. Chattah to serve as the acting U.S. Attorney.

---

[6] *See, e.g.*, Isabella Aldrete, *Trump extends Sigal Chattah's term as US attorney . . .* , The Nevada Independent (July 29, 2025), https://thenevadaindependent.com/article/trump-extends-sigal-chattahs-term-as-us-attorney-despite-opposition-from-nevada-senators.

[7] *See* Mark Robison, *Trump appoints Chattah acting US attorney for Nevada . . .* , Reno Gazette Journal (July 30, 2025), https://www.rgj.com/story/news/politics/2025/07/30/trump-appoints-chattah-acting-us-attorney-for-nevada-blocking-judges/85429497007/; Steve Sebelius, *Sigal Chattah appointed as acting U.S. attorney . . .* , KTNV Las Vegas (July 30, 2025), https://www.ktnv.com/news/sigal-chattah-appointed-as-acting-u-s-attorney-amongst-qualification-concerns.

[8] *See Meet the Acting U.S. Attorney*, U.S. Dep't of Justice (July 30, 2025), https://www.justice.gov/usao-nv/meet-us-attorney.

[9] *See* Noble Brigham, *Could Nevada's top federal prosecutor face challenges after NJ ruling?*, Las Vegas Review Journal (Aug. 22, 2025), https://www.reviewjournal.com/local/local-nevada/could-nevadas-top-federal-prosecutor-face-challenges-after-n-j-ruling-3428697/.

## II.    The administration has pursued similar maneuvers in other districts.

Ms. Chattah's purported installment as acting U.S. Attorney follows a pattern covering at least four other districts.

### A.    The District of New Jersey.[10]

Philip R. Sellinger was the last Senate-confirmed U.S. Attorney for the District of New Jersey.  Mr. Sellinger resigned from the position effective January 8, 2025.

Following Mr. Sellinger's resignation, on or about January 8, 2025, Vikas Khanna—who was then serving as the first assistant U.S. Attorney—began serving as the acting U.S. Attorney.

On or about March 3, 2025, the administration appointed John Giordano as interim U.S. Attorney under 28 U.S.C. § 546.  On or about March 28, the administration replaced Mr. Giordano and appointed Alina Habba as interim U.S. Attorney.  The administration nominated her for the permanent U.S. Attorney position on June 30.

With Ms. Habba's term under Section 546 nearing its anticipated end, on July 22, 2025, the judges of the district appointed Desiree Grace, who was then serving as the first assistant U.S. Attorney, as the interim U.S. Attorney under 28 U.S.C. § 546(d).  The appointment was effective on July 22, or on an undetermined date when Ms. Habba's tenure ended under Section 546, whichever came later.

---

[10] *See United States v. Giraud*, No. 24-cr-768, 2025 WL 2416737, at *1–5 (D.N.J. Aug. 21, 2025); *United States v. Giraud*, No. 24-cr-768, 2025 WL 2196794, at *1–3 (D.N.J. Aug. 1, 2025).

1    The administration fired Ms. Grace on July 22, 2025, and, on July 24, took

2  the following five actions:

3    • withdrew Ms. Habba's nomination for the permanent position;

4    • had Ms. Habba purport to resign as interim U.S. Attorney;

5    • appointed Ms. Habba as special attorney under 28 U.S.C. §§ 509, 510,

6       and 515;

7    • designated Ms. Habba the first assistant U.S. Attorney; and

8    • thereby purported to have Ms. Habba automatically elevated to acting

9       U.S. Attorney under 5 U.S.C. § 3345(a)(1).

10    Two sets of defendants challenged Ms. Habba's authority to serve as acting

11  U.S. Attorney.  The Chief Judge of the Third Circuit appointed an out-of-district

12  judge, Chief Judge Matthew W. Brann (M.D. Pa.), to preside over the motions.

13  Judge Brann issued two relevant decisions.  On August 1, 2025, the court issued a

14  decision regarding potential remedies for the defendants.  *Giraud*, 2025 WL

15  2196794, at *4–11.  On August 21, the court concluded Ms. Habba was not lawfully

16  performing the functions and duties of the U.S. Attorney.  *Giraud*, 2025 WL

17  2416737, at *8–28.  The Court refrained from dismissing the indictments but

18  disqualified Ms. Habba from engaging in the prosecutions, as well as any attorneys

19  acting under her supervision or authority.  *Id.* at *28–30.  The government filed a

20  notice of appeal on August 25.

21

22

23

5

**B.    The Northern District of New York.**

Carla B. Freedman was the last Senate-confirmed U.S. Attorney for the Northern District of New York.[11]  Ms. Freedman resigned from the position on February 17, 2025.[12]

Following Ms. Freedman's resignation, on February 17, 2025, Daniel Hanlon—who was then serving as the first assistant U.S. Attorney—began serving as the acting U.S. Attorney.[13]

On March 4, 2025, the administration appointed John Sarcone III as interim U.S. Attorney under 28 U.S.C. § 546, and he began serving in that role on March 17.[14]  The President did not submit Mr. Sarcone as a nominee for Senate confirmation.

On July 14, 2025, shortly before Mr. Sarcone's term under Section 546 was set to expire, the district court announced it declined to appoint an interim U.S.

---

[11] *See Carla B. Freedman is Sworn in as United States Attorney for the Northern District of New York*, U.S. Dep't of Justice (Oct. 8, 2021), https://www.justice.gov/usao-ndny/pr/carla-b-freedman-sworn-united-states-attorney-northern-district-new-york.

[12] *See Carla Freedman Concludes Her Service as United States Attorney*, U.S. Dep't of Justice (Feb. 17, 2025), https://www.justice.gov/usao-ndny/pr/carla-freedman-concludes-her-service-united-states-attorney.

[13] *See Archives: Acting U.S. Attorney Daniel Hanlon*, U.S. Dep't of Justice (Mar. 17, 2025), https://www.justice.gov/archives/usao-ndny/daniel-hanlon.

[14] *See Attorney General Pamela Bondi Appoints John A. Sarcone III as U.S. Attorney*, U.S. Dep't of Justice (Mar. 4, 2025), https://www.justice.gov/usao-ndny/pr/attorney-general-pamela-bondi-appoints-john-sarcone-iii-us-attorney.

Attorney under its Section 546(d) authority.[15]  The administration then purported to re-designate Mr. Sarcone both as a special attorney to the Attorney General and as the first assistant U.S. Attorney, thereby purporting to have him automatically elevated to acting U.S. Attorney.[16]  The defense has seen no indication the President nominated him for the permanent position.

### C.    The Central District of California.

Martin Estrada, the most recent Senate-confirmed U.S. Attorney for the Central District of California, resigned on January 17, 2025.[17]  From that date until April 1, then-first assistant Joseph McNally served as acting U.S. Attorney.  *Id.*

On April 1, 2025, the Attorney General appointed Bilal Essayli as interim U.S. Attorney under 28 U.S.C. § 546, and he was sworn in on April 2.[18]  Some

---

[15] *See Announcements: United States Attorney for the Northern District of New York* (N.D.N.Y. July 14, 2025), https://www.nynd.uscourts.gov/news/united-states-attorney-northern-district-new-york.

[16] *See* Letters from John A. Sarcone III to Chief Judge Brenda K. Sannes and from Jewel Campos to John A. Sarcone III (July 14, 2025), https://www.nynd.uscourts.gov/sites/nynd/files/Letter%20from%20Mr%20Sarcone.pdf.

[17] *See Former United States Attorneys*, U.S. Dep't of Justice (Apr. 2, 2025), https://www.justice.gov/usao-cdca/former-united-states-attorneys.

[18] *Bilal A. Essayli Sworn in as United States Attorney . . .* , U.S. Dep't of Justice (Apr. 2, 2025), https://www.justice.gov/usao-cdca/pr/bilal-essayli-sworn-united-states-attorney-becoming-chief-federal-prosecutor-nations.

7

reporting indicates the judges of the district declined to make an appointment under Section 546(d).[19]

On July 30, 2025, the administration purported to direct Mr. Essayli to serve as acting U.S. Attorney.[20]  The defense has seen no indication that the President himself made the designation, that Mr. Essayli has been named first assistant U.S. Attorney or special attorney, or that the President has nominated him for the permanent position.

### D.    The District of New Mexico.

The most recent Senate-confirmed U.S. Attorney for the District of New Mexico was Alexander M.M. Uballez.  He resigned on February 17, 2025, at the President's direction.[21]  Upon his resignation, first assistant Holland S. Kastrin began serving as acting U.S. Attorney.  *Id.*

On April 17, 2025, the administration appointed Ryan Ellison as the interim U.S. Attorney for the district.[22]  According to the administration, following the

---

[19] *See* Brittny Mejia et al., *Trump administration maneuvers to keep Essayli as L.A.'s top federal prosecutor*, L.A. Times (July 29, 2025), https://www.latimes.com/california/story/2025-07-29/trump-essayli-us-attorney-los-angeles.

[20] *See Acting U.S. Attorney Bilal A. Essayli*, U.S. Dep't of Justice (July 30, 2025), https://www.justice.gov/usao-cdca/meet-us-attorney.

[21] *See U.S. Attorney Alexander Uballez to Step Down . . .* , U.S. Dep't of Justice (Feb. 17, 2025),  https://www.justice.gov/usao-nm/pr/us-attorney-alexander-uballez-step-down-concluding-impactful-tenure-new-mexico.

[22] *See Statement Regarding United States Attorney Ryan Ellison's Acting Appointment*, U.S. Dep't of Justice (Aug. 15, 2025),  https://www.justice.gov/usao-

expiration of his interim appointment, he began serving as the acting U.S. Attorney on or about August 15 "at the request of the Attorney General." *Id.* That statement suggests the President himself did not name Mr. Ellison to the post. The defense has seen no indication that Mr. Ellison has been named first assistant U.S. Attorney or special attorney, or that the President nominated him for the permanent position.

### III. Under Ms. Chattah's leadership, the government secures the instant indictment.[23]

The grand jury issued an indictment against Mr. Garcia alleging one count of prohibited person in possession of a firearm. The indictment is dated and was filed July 30, 2025. Ms. Chattah's name appears at the beginning and the end of the indictment with the title "Acting United States Attorney."

---

nm/pr/statement-regarding-united-states-attorney-ryan-ellisons-acting-appointment.

[23] At present, the defense is filing equivalent motions in what the defense understands to be the only three cases in this district for which the indictment was dated and filed on or after July 26, 2025, and the Court appointed the Federal Public Defender, District of Nevada, to represent the defendant: the instant case; *United States v. Jackson*, No. 2:25-cr-240; and *United States v. Salazar Del Real*, No. 2:25-cr-227. The Federal Public Defender may pursue this issue in other cases but at this time takes no position on whether the issue implicates cases where the indictments predate July 26.

**LEGAL BACKGROUND**

This motion involves the interplay between two statutory regimes: 5 U.S.C. § 3345 et seq., which involves Executive Branch vacancies generally; and 28 U.S.C. § 546, which involves U.S. Attorney vacancies specifically.

**I.    5 U.S.C. § 3345 et seq.**

Title 5, Section 3345 et seq.—known colloquially as the Federal Vacancies Reform Act ("FVRA")—deals with executive branch vacancies generally.

Section 3345(a) covers situations where an officer whose position requires appointment and confirmation "dies, resigns, or is otherwise unable to perform the functions and duties of the office." Under subsection (c)(2), "the expiration of a term of office is an inability to perform the functions and duties of such office." The statute provides three options to fill the position on an acting basis.

The first (and default) rule: an already-in-place first assistant can become the acting officer. Under subsection (a)(1), the first assistant in the office "shall perform the functions and duties of the office temporarily in an acting capacity." This provision "fills the role automatically." *Hooks v. Kitsap Tenant Support Services, Inc.*, 816 F.3d 550, 557 (9th Cir. 2016); *see also NLRB v. SW General, Inc.*, 580 U.S. 288, 295 (2017) (describing this as "a general rule"). As explained below, for this provision to apply, the relevant individual must have been serving as first assistant when the vacancy occurred.

The other two options are exceptions to that default rule; there are "two ways the President may override the automatic operation of" Section 3345(a)(1), *Hooks*, 816 F.3d at 557, and instead select someone other than the then-first assistant.

10

First, under Section 3345(a)(2), "the President (and only the President)" can select another individual as the acting officer, if that other individual is already "serv[ing]" in another position that requires Presidential "appointment" and Senate confirmation.  Second, under Section 3345(a)(3), "the President (and only the President)" can select another senior government leader as the acting officer if the individual satisfies three conditions.  The individual must be currently serving as an Executive Branch employee in the same "agency."  The individual must have served in a position in that agency for at least "90 days" within "the 365-day period preceding" the qualifying vacancy.  And that position must have had a rate of pay "equal to or greater than" the rate provided in the "GS-15" scale.

Whichever way the administration selects the acting officer, the statutory scheme also includes time limits.  Under Section 3346(a)(1), an acting officer may serve "for no longer than 210 days beginning on the date the vacancy occurs." Under Section 3349a(b), if the vacancy exists when a new incoming President is inaugurated, the period is extended: the individual may serve until 300 days after inauguration day.

The FVRA also provides a remedy for improperly appointed individuals: nullification.  Section 3348(d)(1) provides that "[a]n action taken by any person who is not" properly serving as an acting officer "in the performance of any function or duty of a vacant office . . . shall have no force or effect."  Under Section 3348(d)(2), such actions "may not be ratified" later.  This "Ratification Bar . . . applies only to those duties of an officer that are nondelegable." *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064, 1073 (9th Cir. 2024).

1    **II.    28 U.S.C. § 546.**

2        Unlike the FVRA, 28 U.S.C. § 546 deals with U.S. Attorney vacancies

3    specifically.

4        Title 28, Section 541 establishes the position of United States Attorney.

5    Subsection (a) sets the default rule that permanent U.S. Attorneys must receive

6    Presidential appointment and Senate confirmation (a type of position occasionally

7    referred to as a "PAS" position).[24]

8        Section 546 covers U.S. Attorney vacancies.  The statute allows the Attorney

9    General to make an interim appointment: under subsection (a), "the Attorney

10   General may appoint a United States attorney for the district in which the office of

11   United States attorney is vacant."  Individuals serving as interim U.S. Attorneys

12   are "fully-empowered United States Attorneys" as opposed to "subordinates

13   assuming the role of 'Acting' United States Attorney."  *United States v. Gantt*, 194

14   F.3d 987, 999 n.5 (9th Cir. 1999), *overruled on other grounds by United States v.*

15   *W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc).

16       This Attorney-General-directed appointment authority is time-limited.

17   Under Section 546(c)(2), an interim U.S. Attorney may serve for "120 days after

18   appointment by the Attorney General."  This 120-day limit was added to the statute

19

20   _____

21       [24] Other sections deal with other positions, some of which do not require
     Senate confirmation.  Under Section 542, for instance, the Attorney General may

22   appoint assistant United States attorneys—the line prosecutors of the federal
     system.  Under Section 515(a), a Department of Justice attorney (including a
     specially appointed attorney) "may, when specifically directed by the Attorney

23   General, conduct any kind of legal proceeding, civil or criminal, including grand jury
     proceedings . . . which United States attorneys are authorized by law to conduct."

in 2007. *See* Preserving United States Attorney Independence Act of 2007, Pub. L. No. 110-34. And, as detailed below, the 120-day limit was specifically designed to address concerns that presidential administrations might improperly use interim U.S. Attorney appointments to avoid the Senate's constitutional advice-and-consent function.

After an Attorney-General-directed appointee hits the 120-day mark, filling the vacancy falls to the judiciary. Under Section 546(d), if the 120-day "appointment" period "expires," "the district court for such district may appoint a United States attorney to serve until the vacancy is filled."

## ARGUMENT

Ms. Chattah is improperly serving as a non-confirmed U.S. Attorney at least thrice over.

*First*, and most obviously, Ms. Chattah satisfies none of the criteria to be an acting officer under the FVRA. Prior to Mr. Frierson's resignation, she was not (1) an already-in-place first assistant; (2) a Senate-confirmed officer in another role; or (3) an already-in-place senior official in the U.S. Attorney's Office. Because Ms. Chattah is not a proper FVRA "acting" officer, her post-July 26 actions have no force or effect.

*Second*, and alternatively, Ms. Chattah cannot continue serving as acting U.S. Attorney under the FVRA after she exhausted her 120-day interim appointment under Section 546(c). That more-specific 120-day time limit controls over the FVRA's general-purpose provisions here—a reality confirmed by at least three statutory interpretation principles (specific-over-general, the presumption-

13

against-surplusage canon, and the "mischief" rule).  In brief: once the administration appoints someone under Section 546, a non-confirmed "interim" U.S. Attorney can serve in the role only 120 days, even if the administration redesignates the same individual as an acting (as opposed to an interim) U.S. Attorney.  Since Ms. Chattah has purported to serve past the 120-day time limit, her post-July 26 actions are unlawful.

And, *third*, even if Ms. Chattah's purported appointment somehow technically complied with the statutes, the particular maneuver here would pose grave Appointments Clause problems.  U.S. Attorneys exercise sufficient power to be principal officers for constitutional purposes.  And despite Ms. Chattah's acting label, the administration is attempting to capture essentially all that power by extending her term—potentially indefinitely.  If the administration's statutory reading is right, then its theory would require Ms. Chattah to be confirmed by the Senate.

Under whatever framing, Ms. Chattah cannot legally exercise the duties of the acting U.S. Attorney for the District of Nevada.  The Court should dismiss the indictment against Mr. Garcia because it was dated and filed during Ms. Chattah's time as an improperly designated acting U.S. Attorney.  Alternatively, and at a minimum, the Court should disqualify Ms. Chattah and all those under her supervision at the United States Attorney's Office for the District of Nevada from further proceedings in this matter.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**I.    Ms. Chattah is not properly serving as U.S. Attorney.**

    **A.    Ms. Chattah is not a qualified acting officer under 5 U.S.C. § 3345.**

Ms. Chattah cannot serve as an acting officer under Section 3345. Mr. Frierson's resignation on January 17, 2025, is a qualifying vacancy under the statute, but Ms. Chattah does not meet the statutory requirements necessary to fill that vacancy. The government may invoke the vacancy that occurred on or about July 26, when Ms. Chattah's term under Section 546 expired, or on or about July 28, when she purported to resign as interim U.S. Attorney, but neither was a qualifying vacancy.

        **1.    Ms. Chattah is ineligible to fill the vacancy caused by Mr. Frierson's resignation.**

A vacancy occurred under 5 U.S.C. § 3345(a) when Mr. Frierson resigned as the Senate-confirmed U.S. Attorney on January 17, 2025. But Ms. Chattah is not eligible to serve as an acting officer to fill that vacancy. The administration has three options to direct someone to serve as an acting officer under Section 3345(a), but none of those options applies to Ms. Chattah.

        **a.    Ms. Chattah was not an already-in-place first assistant.**

Under Section 3345(a)(1)—the default rule—the first assistant to the officer becomes the acting officer. But Ms. Chattah was not the first assistant U.S. Attorney for the district on January 17, 2025, and, on information and belief, has never served as first assistant. Rather, on information and belief, Ms. Fahami has

consistently served as first assistant from before January 17 to present.[25]  Indeed, Ms. Fahami served as acting U.S. Attorney from on or about January 21 to April 1 under Section 3345(a)(1) based on her role as first assistant.  Ms. Chattah is therefore ineligible to serve as an acting officer under that provision.

Assuming the administration named Ms. Chattah first assistant on or about July 28, 2025 (or does so now), that would not solve the problem.  Rather, for Section 3345(a)(1) to operate, the relevant individual must have been serving as first assistant when the vacancy occurred.  *See SW General, Inc. v. NLRB*, 796 F.3d 67, 78 (D.C. Cir. 2015) ("Although we do not decide its meaning today, subsection (a)(1) may refer to the person who is serving as first assistant *when the vacancy occurs*."); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 28 (D.D.C. 2020) (expressing "doubt on whether Congress intended the phrase 'first assistant' to encompass those appointed to the first-assistant position after the vacancy arose").[26]  That much is "convincingly" confirmed by the "statutory framework" for at least two reasons.  *Giraud*, 2025 WL 2416737, at *14.

First, Section 3345(a)(1) "function[s] in a simple if-then form": "the promotion of the first assistant occurs automatically at the moment of the vacancy."  *Giraud*,

---

[25] As explained above, some reporting indicates Ms. Chattah has been named first assistant, but the defense has not confirmed that reporting.

[26] *See also* Stephen Migala, *The Vacancies Act and a Post-Vacancy First Assistant of USCIS*, at 20 (Sept. 9, 2019), https://ssrn.com/abstract=3450843 ("Critically, the precise question of whether the first assistant to a PAS office can be installed post-vacancy was answered in the negative."); Federal Vacancies Reform Act, S. Rep. No. 105-250, at 14–15 (1998) ("This provision allows the office to be temporarily filled by 'the person' who was originally eligible to be the acting officer at the time the vacancy arose.").

1    2025 WL 2416737, at *14.  As a result, "[t]here is no textual indication that the

2    President has any choice in invoking the first assistant provision."  *Id.*  And that

3    likewise means the provision is "no[t] . . . meant to trigger at any time other than

4    the moment that the vacancy occurs."  *Id.*

5         And, second, allowing an administration to name its own first assistant post-

6    vacancy and then turn that person into the acting officer "would render the limits in

7    subsections (a)(2) and (a)(3) surplusage in the vast majority of cases."  *Giraud*, 2025

8    WL 2416737, at *15.  "Those provisions set a very high bar for the President's

9    options for a non-first-assistant acting official."  *Id.*  "But if the President may

10   simply name anyone as the first assistant at any time and thereby vest them with

11   acting powers, these limitations on acting service are rendered entirely irrelevant."

12   *Id.*  The statute is better read to avoid these issues: only an already-in-place first

13   assistant—not a post-vacancy one—can assume the acting title.  *See id.*

14        In brief: the first assistant when the January 17 vacancy occurred was

15   Ms. Fahami, not Ms. Chattah.  Ms. Chattah thus cannot serve as acting U.S.

16   Attorney under this provision.

**b.    Ms. Chattah was not Senate-confirmed for another office.**

18        Under Section 3345(a)(2), the President can alternatively direct another

19   individual to serve as an acting officer if the other individual has already been

20   nominated and confirmed for another executive office and is presently serving in

21   that office.  But, on information and belief, Ms. Chattah has never been nominated

17

and confirmed for another executive office.  Ms. Chattah is therefore ineligible to

serve as acting U.S. Attorney under this provision.

### c.    Ms. Chattah was not an already-in-place senior officer in the relevant office.

Under Section 3345(a)(3), the President can alternatively direct another

individual to serve as an acting officer if the individual worked in the relevant

agency (and received a salary equal to or above the GS-15 scale) for at least 90 days

during the previous 365 days preceding the vacancy.  But, on information and

belief, Ms. Chattah was not working in the U.S. Attorney's Office (or the

Department of Justice) at all between January 2024 and January 2025.  To the

contrary, on information and belief, she was in private practice.[27]  Ms. Chattah is

therefore ineligible to serve as acting U.S. Attorney under Section 3345(a)(3).

Because Ms. Chattah is not an eligible acting officer under any of the three

statutory options, her designation as acting U.S. Attorney is invalid.

### 2.    The July vacancy is not a qualifying vacancy.

Ms. Chattah's term as interim U.S. Attorney ended on July 26, 2025.  In the

alternative, assuming her term was set to end on July 30, she purported to resign as

interim U.S. Attorney on or about July 28.  Either way, the July 26 or July 28

vacancy does not render her eligible to serve as acting U.S. Attorney for three

independent reasons: (1) only departures of Senate-confirmed officers count; (2)

assuming her term was still active on July 28, there was no bona fide resignation;

---

[27] *See Sigal Chattah Appointed Interim United States Attorney for the District of Nevada*, U.S. Dep't of Justice (Apr. 1, 2025), https://www.justice.gov/usao-nv/pr/sigal-chattah-appointed-interim-united-states-attorney-district-nevada.

and (3) any resignation (or expiration of her term) means that Ms. Chattah was not an employee of the relevant executive agency (the U.S. Attorney's Office for the District of Nevada) at the time of her purported acting designation.

First, the resignation (or the expiration of the term) of an acting, interim, or other temporary officer is insufficient to create a vacancy within the meaning of Section 3345(a). Rather, a qualifying vacancy occurs only if a *Senate-confirmed* individual leaves office. "[T]he person whose 'vacancy' brings the [statute] into operation must have ascended to the post through a Presidential appointment," as opposed to a temporary assignment. *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203, 208 (D.C. Cir. 1998) (interpreting the pre-1998 version of the statute), *superseded by statute on other grounds as recognized in Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020).[28] "There may be instances when a person, not constitutionally appointed, temporarily performs the duties of" an office that generally requires appointment and confirmation. *Id.* But the temporary officer's "performance of those duties does not make him . . . an 'officer' . . . for the purposes of the Act." *Id.* "Otherwise," the time limitations on acting service "could be easily avoided by a series of temporary replacements followed by resignations, with each

_____

[28] *See also Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*, 732 F. Supp. 1183, 1195 (D.D.C. 1990) (concluding the term "officer" in the pre-1998 version of the statute means "constitutional officer," typically "an officer selected by the President with the advice and consent of the Senate") (cleaned up), *appeal dismissed and remanded*, 903 F.2d 837 (D.C. Cir. 1990). *Doolin* reached additional holdings regarding the statutory scheme; in 1998, Congress amended the statutes in a manner that overrides some of those additional holdings. *See, e.g., Gonzalez*, 107 F.4th at 1093–94 (Christen, J., dissenting) (discussing one such holding). But nothing in the statutory amendments altered *Doolin*'s conclusion that a vacancy under Section 3345 occurs only when a *Senate-confirmed* individual leaves office.

resignation triggering a new" acting officer designation. *Id.* "In short," the acting

officer statutes "apply only to those vacancies caused by the departure of an officer

of the Executive Branch who had been appointed by the President." *Id.*

Accordingly, the departure of a temporary official—like an interim U.S.

Attorney—does not qualify as a departure under the statute because the Senate has

not confirmed the individual for the position. Because Ms. Chattah was serving as

a non-Senate-confirmed interim U.S. Attorney at the time of her resignation (or the

expiration of her term), her departure failed to create a new vacancy under Section

3345.

Second, assuming Ms. Chattah's term remained active on July 28, 2025, and

assuming an interim U.S. Attorney's bona fide resignation could in the abstract

qualify as a new vacancy under Section 3345, another problem arises. Ms. Chattah

may have technically resigned from her position on July 28. But that resignation

was not a bona fide resignation. It therefore failed to create a qualifying vacancy

under the statute.

The verb "resign" means "[t]o formally announce one's decision to leave a job

or an organization." Black's Law Dictionary (12th ed. 2024). To genuinely resign

from an office, the individual must possess a subjective desire "to surrender" the

duties of the office, at least for the foreseeable future. *Id.* If an individual purports

to resign from an office but expects to automatically reassume exactly the same

duties through procedural machinations leading to an equivalent role and/or title,

the individual is not truly "resigning" in any meaningful sense of the word.

Those concerns are present here.  Ms. Chattah apparently resigned her position as interim U.S. Attorney on or about July 28, 2025; immediately or shortly thereafter, she was apparently directed to serve as the acting U.S. Attorney.  An interim U.S. Attorney and an acting U.S. Attorney have substantially the same duties—both roles fill the U.S. Attorney position temporarily pending (in the typical case) Senate confirmation of a permanent nominee.  Assuming Ms. Chattah resigned as interim U.S. Attorney solely to allow herself to be named acting U.S. Attorney, her technical resignation as interim U.S. Attorney cannot be deemed a true resignation under the statute.[29]

A contrary understanding of the term "resignation" would be untenable.  "[W]ell-accepted rules of statutory construction caution us that statutory interpretations which would produce absurd results are to be avoided."  *Arizona State Bd. For Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) (cleaned up).  Likewise, courts should not interpret a statute to frustrate clear legislative intent.  *See, e.g.*, *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 455–65 (1989).  If the resignation of a temporary officer were understood to create a new vacancy under Section 3345(a), and if a mere technical resignation counted as a true resignation under the statute, then the administration could allow the temporary officer to serve as the acting officer indefinitely, merely by having the

---

[29] Illustrating the point, when Ms. Habba "resigned" her interim U.S. Attorney position in New Jersey, her resignation letter read as follows:  "I hereby resign my position as Interim United States Attorney . . . . I look forward to continuing to lead the U.S. Attorney's Office."  *United States v. Giraud*, No. 24-cr-768, ECF No. 108-4 (D.N.J. filed July 29, 2025).

individual repeatedly resign and get re-designated.  With that understanding, the

relevant time limitations on acting service—and the need for a permanent nominee

to receive Senate confirmation—"could be easily avoided."  *Doolin*, 139 F.3d at 208.

Section 3345 cannot be understood in this fashion.  Rather, to create a

qualifying vacancy under the statute, a "resignation" must be bona fide.

Ms. Chattah's technical resignation as interim U.S. Attorney was not bona fide.  To

the contrary, the administration immediately redesignated her into a materially

equivalent position as acting U.S. Attorney.  The resignation therefore failed to

create a new vacancy.

Third, even if the July vacancy created a qualifying vacancy, Ms. Chattah

remains ineligible.  Section 3345(a)(1) cannot apply because, even assuming the

administration designated her first assistant in July (or does so in the future), the

provision applies to the individual in the first assistant role at the moment the

vacancy occurs, and on information and belief Ms. Chattah was not simultaneously

serving as first assistant and interim U.S. Attorney at the moment the July vacancy

occurred.  Section 3345(a)(2) cannot apply because on information and belief

Ms. Chattah has not been nominated and confirmed to another Executive Branch

position.  Section 3345(a)(3) cannot apply either.  That provision allows the

President to "direct an officer or employee of such Executive agency to perform the

functions and duties of the vacant office."  In other words, the President can select

someone who is currently working in the office—at the moment the vacancy

occurs—to serve as the acting officer.  On information and belief, once Ms. Chattah's

term expired on July 26, 2025, or in the alternative once she resigned on July 28,

1    she was no longer working for the U.S. Attorney's Office at the moment the vacancy

2    occurred, because the vacancy itself—the term expiration or her resignation—

3    ceased her employment with the office.  At that point, the President could have

4    selected as acting officer a sufficiently senior employee who, at that moment, was

5    working for the U.S. Attorney's Office.  But because Ms. Chattah was no longer with

6    the office at that moment, she was ineligible.

7         Were there any doubt on these questions of statutory interpretation, the

8    Court should apply the canon of constitutional avoidance and resolve them in the

9    defense's favor.  *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)

10   (discussing the canon); *United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When

11   legislation and the Constitution brush up against each other, our task is to seek

12   harmony, not to manufacture conflict.").  As explained below, a contrary reading of

13   the statutes would pose serious concerns under both the Appointments Clause and

14   separation of powers principles by allowing the Executive Branch to circumvent the

15   constitutional requirements of receiving advice and consent from a co-equal branch

16   of government.[30]  The Court should refuse to read the statute in this

17   unconstitutional manner.

18        The constitutional concerns are heightened because the administration's

19   maneuvers are novel—particularly the designation of Ms. Chattah as a "special

20

21   _____

22        [30] *See, e.g.*, *Freytag v. C.I.R.*, 501 U.S. 868, 878, 880, 887 (1991) (noting these
     types of challenges go to "the Constitution's structural integrity" and "the entire
     Republic" because they reflect one branch attempting to "aggrandiz[e] its power at
23   the expense of another branch" and thereby "diffus[e] the appointment power");
     *Giraud*, 2025 WL 2416737, at *5 (quoting *Freytag*).

attorney." Although "Attorneys General [have] made extensive use of special attorneys," *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975), the administration's efforts in this and related cases appear to be the first times that an Attorney General has used the special-attorney appointment provision in 28 U.S.C. § 515 or its predecessors to purportedly install an acting U.S. Attorney.[31]  *Cf. Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 220 (2020) ("Perhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it.") (cleaned up).  In brief: the administration is attempting an unusual maneuver that contravenes the text of the statute and poses grave constitutional concerns.  Such efforts should be rejected.

### 3.    There is no indication the President made the designation directly.

If the President seeks to designate someone other than the first assistant as an acting officer under Sections 3345(a)(2) or 3345(a)(3), the statutes provide that "the President (and only the President)" must give the direction.  Assuming the administration purported to direct Ms. Chattah to serve as acting U.S. Attorney under Sections 3345(a)(2) or 3345(a)(3), the defense has insufficient information to determine whether President Trump specifically (as opposed to another Executive

---

[31] The first instance of designating a special attorney as an acting U.S. Attorney appears to be Ms. Habba's purported acting designation in the District of New Jersey—done less than a week before Ms. Chattah's purported acting designation here.

Branch officer) gave the direction.[32]  Unless the government can provide evidence demonstrating President Trump specifically gave the direction, Ms. Chattah's tenure is invalid for this independent reason.

*        *        *

Ms. Chattah satisfies none of the three paths to serve as an acting U.S. Attorney under Section 3345(a).  Ms. Chattah is not legally an acting officer under that statute.

### B.    Even if Ms. Chattah were qualified under 5 U.S.C. § 3345, the controlling time limit is from 28 U.S.C. § 546.

If Ms. Chattah somehow satisfied the FVRA's requirements, she is invalidly exercising the powers of U.S. Attorney because she has exceeded 28 U.S.C. § 546's time limits.  Under that U.S.-Attorney-specific statute, Ms. Chattah could serve as a non-confirmed U.S. Attorney for only 120 days.  The administration cannot get her additional days—and thereby disregard both the judicial appointment power in Section 546(d) and the Senate's constitutional advice-and-consent function—by invoking the FVRA's more general timelines.

At least three rules of statutory interpretation confirm as much:

(1)    the specific-over-general canon;

(2)    the presumption against surplusage; and

(3)    the "mischief" rule.

---

[32] *Cf. Statement Regarding United States Attorney Ryan Ellison's Acting Appointment*, U.S. Dep't of Justice (Aug. 15, 2025), https://www.justice.gov/usao-nm/pr/statement-regarding-united-states-attorney-ryan-ellisons-acting-appointment (explaining Mr. Ellison is purporting to serve as acting U.S. Attorney "at the request of the Attorney General").

This section addresses each in turn.

### 1. A non-confirmed U.S. Attorney appointed under Section 546 cannot serve more than 120 days.

The defense assumes for the sake of argument that in the abstract, the administration can either designate an acting U.S. Attorney under Section 3345 or an interim U.S. Attorney under Section 546.[33]  But if the administration pursues the latter route, the individual appointed as interim U.S. Attorney may serve for only 120 days in either an interim or an acting capacity.  Because Ms. Chattah has exceeded the 120-day limit (which ended on July 26, 2025, assuming her appointment occurred on March 28), her continued post-July 26 service as acting U.S. Attorney is improper.

Under Section 546(c) and (c)(2), "A person appointed as United States attorney under this section *may serve* until . . . the expiration of 120 days after appointment" (emphasis added).  Ms. Chattah was appointed as interim U.S. Attorney under Section 546.  Thus, she "may serve" in a temporary capacity for only "120 days."  28 U.S.C. § 546(c) & (c)(2).  That rule applies regardless of whether her service proceeds under Section 546 or Section 3345—either way, she is

[33] In *Hooks*, the Ninth Circuit concluded the administration could direct someone to serve as the Acting General Counsel of the National Labor Relations Board under Section 3345, even though a more specific statute (29 U.S.C. § 153(d)) covered the temporary designation of an Acting General Counsel.  816 F.3d at 556 ("[T]he President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel.").  *Hooks* may appear to foreclose an argument that the administration cannot elect between Section 3345 and Section 546.  The defense nevertheless preserves for further review a challenge to *Hooks* along the same lines as the argument presented here:  because Section 546 is the more specific statute, the administration may proceed only through Section 546 and not through the more general framework from Section 3345.

"serv[ing]" in a materially equivalent role as a temporary, non-confirmed U.S. Attorney. *Id.* She may no longer continue to "serve" under either statute following the end of the 120-day period. *Id.*

This conclusion respects the canon of statutory interpretation regarding specific and general statutes. When assessing the interplay between two statutes, "the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (cleaned up); *see also id.* (describing this rule as "well established" and "commonplace"); *Morton v. Mancari*, 417 U.S. 535, 550 (1974) ("a specific provision applying to a very specific situation" controls over a law "of general application"); *United States v. Bormes*, 568 U.S. 6, 12–13 (2012) (identifying that this rule also applies across statutes enacted at different times). This canon is often employed where "a general permission or prohibition is contradicted by a specific prohibition or permission." *RadLAX*, 566 U.S. at 645. "But the canon has full application as well to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side." *Id.* In either setting, "[t]he terms of the specific authorization must be complied with." *Id.*

The statutes here present such a general-specific issue. The FVRA provides a "general authorization," *RadLAX*, 566 U.S. at 645, for all manner of Executive Branch "acting" officials to serve for specified time limits, *see* 5 U.S.C. § 3345(a) (applying generally to "an officer of an Executive agency"). Then Section 546 gives a "more limited, specific authorization," *RadLAX*, 566 U.S. at 645—120 days—for a particular type of Executive Branch official: an individual appointed to serve as an

interim U.S. Attorney.  *See* 28 U.S.C. § 546(a) (applying to "the office of United States attorney").  Since these timelines conflict, "the specific presumptively governs."  *RadLAX*, 566 U.S. at 648.  And that means Section 546(c)'s 120-day limit "must be complied with," *id.* at 645—at least with respect to temporary U.S. Attorneys who have been initially selected under Section 546.

That conclusion is further strengthened by the fact that Section 546(c)'s time limit is newer than the FVRA.  "When two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will."  *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991).[34]  The FVRA's time limits stem from 1998.  *See* Pub. L. No. 105-277, § 151(b) (1998).  Section 546(c)'s 120-day limit hails from 2007, having been re-added to the statute as part of the Preserving United States Attorney Independence Act, Pub. L. No. 110-34 (2007). As explained below, Congress enacted the 2007 statute precisely to avoid indefinite interim appointments.  Because the Section 546(c) appointment period is "*both* later in time *and* more specific," it controls over the general FVRA time limits.  *Murphy Co. v. Biden*, 65 F.4th 1122, 1140 (9th Cir. 2023) (Tallman, J., concurring in part and dissenting in part).

---

[34] *See also e.g.*, *United States v. Estate of Romani*, 523 U.S. 517, 530–31 (1998) ("[A] specific policy embodied in a later federal statute should control our construction of [an earlier] statute, even though [the earlier statute] had not been expressly amended."); *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1165 (9th Cir. 2022) ("If the newer statute comes closer to addressing the very problem posed by the case at hand, it is as if the later-enacted statute effectively repealed the conflicting provisions of the earlier one.") (cleaned up).

Simply put: Congress knew there were more-generally-applicable FVRA time limits out there. That it chose to specifically add a 120-day limit in Section 546(c) against that backdrop confirms that Section 546(c)'s time limit controls here. Ms. Chattah has already served over 120 days in a temporary capacity and cannot continue to serve as either acting or interim U.S. Attorney.

## 2. A contrary reading would render Section 546(d) superfluous.

The administration's attempt to extend Ms. Chattah's appointment beyond the 120 days authorized by Section 546(c) would improperly render Section 546(d)'s judicial appointment power superfluous. Under the administration's view, Section 546(d) is not triggered so long as the administration re-names the same person the "acting" U.S. Attorney under Section 3345. If that is true, judicial appointment would rarely (potentially never) happen. And so Section 546(d)'s judicial appointment power "would lie dormant in all but the most unlikely situations." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). That surplusage problem renders the administration's reading improper under ordinary statutory interpretation principles. And it is a particular problem given the constitutional backdrop to Congressional involvement here—as well as the 150-plus-year history of district courts' involvement in U.S. Attorney vacancy appointments. The Court should avoid such a surplusage problem by strictly enforcing Section 546(c)'s 120-day limit.

Courts read statutes to give effect to each of their provisions. *Corley v. United States*, 556 U.S. 303, 314 (2009) (identifying as "one of the most basic

1   interpretive canons[] that a statute should be construed so that effect is given to all

2   its provisions") (cleaned up).  It is thus "a cardinal principle of statutory

3   construction that a statute ought . . . to be so construed that . . . no clause,

4   sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.*, 534 U.S.

5   at 31 (cleaned up).  And that rule is applied "with special force" where (as here) a

6   potential interpretation "renders an entire subparagraph meaningless." *Pulsifer v.*

7   *United States*, 601 U.S. 124, 143 (2024) (cleaned up).  And it is even stronger still

8   "when the subparagraph is so evidently designed to serve a concrete function." *Id.*

9   In such settings, superfluity concerns are particularly acute.  *See id.*

10       Those constraints cut against the administration's apparent reading here.

11   The administration seems to believe it can simply re-name an expired (or almost-

12   expired) Section 546(a) appointee as an "acting" official under Section 3345.  If that

13   is right, then Section 546(d)'s judicial-appointment function would apply only in

14   "the most unlikely situations." *TRW Inc.*, 534 U.S. at 31.  Indeed, under such a

15   view, an administration could more than double the length of its non-confirmed

16   U.S. Attorney appointments, turning Section 546(c)'s 120-day limit into 330 days—

17   or maybe an indefinite period, by repeatedly stacking or swapping an individual's

18   acting or interim status.  And it could do so without ever having another branch of

19   government—neither Congress nor the judiciary—evaluate the appointee.  It is not

20   evident from the administration's apparent reading that its efforts would ever

21   trigger either Senate confirmation or Section 546(d) judicial appointment.  That is

22   a surplusage problem.  *See TRW Inc.*, 534 U.S. at 31.

23

1    If that were not enough, the administration's superfluity reading would

2  contravene over a century and a half of judicial appointment power in this space.

3  The judicial power to fill U.S. Attorney vacancies until a Senate-confirmed

4  successor predates the Attorney General's temporary appointment power by nearly

5  125 years.[35]  In fact, before 1986, federal district courts had exclusive authority to

6  fill such vacancies.  *See* H.R. Rep. No. 110-58, at 4 (2007).  And that judicial power

7  even existed for 20 years in modern form in Section 546—from 1966 to 1986—

8  before the Attorney General received the 120-day, time-limited appointment power.

9  *See id.*  Judicial appointment is, in short, "the rule."  *Cuomo v. Clearing House*

10  *Ass'n, LLC*, 557 U.S. 519, 530 (2009).  The Court should not allow the more recent

11  "exception" of Executive Branch involvement to "swallow" that longstanding

12  practice.  *Id.*

13    Unsurprisingly, prior presidential administrations have avoided that result

14  and have given effect to the Section 546(d) judicial appointment power.  Until now,

15  a near-expired Section 546(a) appointee would typically be submitted to the

16  appropriate federal district court for potential re-appointment under Section

17

18

19  _____

20    [35] Exclusive judicial power to fill U.S. Attorney vacancies dates to at least
1863.  Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768 (1863) ("In case of a vacancy in
21  the office of . . . district attorney in any circuit, the judge of such circuit may fill
such vacancy, and the person so appointed shall serve until an appointment shall be
22  made by the President, and the appointee has duly qualified."); *see generally* Bruce
A. Green & Rebecca Roiphe, *Depoliticizing Federal Prosecution*, 100 Denv. L. Rev.
23  817, 836–37 (2023) (identifying that the judicial interim appointment power dates
at least to that 1863 statute).

546(d).[36]  Rather than follow that routine practice, however, this administration is now embracing an interpretation of the statutes that would make Section 546(d) irrelevant "in all but the most unlikely situations." *TRW Inc.*, 534 U.S. at 31.  That calls its novel strategy into doubt.  *See id.*; *cf. Seila Law*, 591 U.S. at 220 (identifying "a lack of a historical precedent" as "[p]erhaps the most telling indication of a severe constitutional problem") (cleaned up).

The defense's reading, by contrast, suffers from neither a surplusage problem nor a novelty one.  *See Corley*, 556 U.S. at 314.  Under the defense's view, the FVRA time limits still have meaningful effect—they apply to all sorts of acting officials, including an acting U.S. Attorney, other than an individual who has already been selected as an interim U.S. Attorney under Section 546.  *See id.*; *cf. Gorecki v. Comm'r, Social Security Admin.*, 143 F.4th 1295, 1298–1301 (11th Cir. 2025) (discussing FVRA time limits for an acting commissioner of the Social Security Administration).

Only under the defense's reading do the two statutes work together harmoniously as intended.  Congress sensibly gave the Executive Branch a choice between two distinct options in a manner that protects Congress' interest in the advice-and-consent process.  Without burdening the President, the Attorney

---

[36] *See generally* Ross E. Wiener, *Inter-Branch Appointments After the Independent Counsel: Court Appointment of United States Attorneys*, 86 Minn. L. Rev. 363, 399–400 (2001) (describing this historical practice); *see also, e.g.*, *Statement of U.S. Attorney Geoffrey S. Berman on Appointment by Chief Judge*, U.S. Dep't of Justice (Apr. 25, 2018), https://www.justice.gov/usao-sdny/pr/statement-us-attorney-geoffrey-s-berman-appointment-chief-judge.

General can select virtually anyone to serve under Section 546(a), providing

flexibility and speed in filing a vacancy.  But that selection lasts only four months

and cannot be extended without court approval, incentivizing a quick

nomination.  Alternatively, the President can intervene and make an FVRA

selection—and secure its longer timeline—but the selection must come from a

closed universe of senior officials, including those who have already been subjected

to advice and consent, and excluding those who were previously selected under

Section 546.

### 3.  The Court should enforce Section 546's 120-day limit to prevent the "mischief" underlying its enactment.

Section 546(c)'s 120-day time limit should be strictly enforced given the

"mischief" that brought it about.  Congress enacted Section 546(c) because it

perceived that the Executive Branch was subverting the traditional Senate

confirmation process with indefinite "interim" U.S. Attorney appointments.  And

that is essentially what the administration would authorize itself to do here with

its interim-followed-by-acting maneuver.  Section 546(c) is properly interpreted to

avoid that result.

A statute's meaning is informed by the "mischief" that prompted its

enactment.  *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 866 (2014); *see generally*

Samuel L. Bray, *The Mischief Rule*, 109 Geo. L. J. 967 (2021) (explaining the

history of this rule; collecting cases).  Courts can thus properly draw the statute's

meaning from "the context from which the statute arose"—especially where a

statute is designed to "address" a particular "problem."  *Bond*, 572 U.S. at 866 (first

quote); *In re Fairfield Sentry Ltd.*, __ F.4th __, 2025 WL 2218836, at *13 (2d Cir. 2025) (second one); *see also TRW Inc.*, 534 U.S. at 29 (identifying that courts should avoid an interpretation that is "contrary to Congress' apparent intent"). And so, as specifically relevant here, a statute should be interpreted to prevent "clever evasions" that would allow the legislatively addressed problem to continue. Bray, *The Mischief Rule*, 109 Geo. L. J. at 1005–07.[37]

These mischief-rule principles confirm that an administration cannot extend an interim appointee's term past Section 546(c)'s 120-day limit by invoking Section 3345. That 120-day limit was enacted in 2007 to combat a particular problem: the indefinite replacement of Senate-confirmed U.S. Attorneys with non-confirmed "interim" appointments. The context is instructive. In early 2006, and with minimal public discussion, Congress removed all time limits on non-confirmed "interim" U.S. Attorney appointments.[38] Then, in December 2006, the Executive Branch capitalized on its newly expanded "interim" appointment powers by firing

---

[37] *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (identifying that the Federal Arbitration Act "was enacted in 1925 in response to widespread judicial hostility to arbitration agreements," and reading the savings clause of that Act narrowly to prevent circumvention of that legislative direction); *NLRB v. Hearst Pubs.*, 322 U.S. 111, 126 (1944) (reading "employee" to cover independent contractors because "[t]he mischief at which the Act is aimed and the remedies it offers are not confined exclusively to 'employees' within the traditional legal distinctions separating them from 'independent contractors'"), *superseded by statute as recognized by Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324–25 (1992).

[38] *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 502 (2005); *see also* H.R. Rep. No. 110-58 (2007) (noting that the time-limit removal in 2006 "was inserted quietly into the conference report on the 2005 Act, without debate").

various Senate-confirmed U.S. Attorneys and indefinitely replacing them with non-confirmed "interim" appointees.[39]  Such moves, members of Congress worried, would permit the Executive Branch to improperly skirt the Senate confirmation process—and undermine longstanding Senate practice favoring home-state Senator input in the selection of U.S. Attorneys (the so-called "blue slip" process).[40]  In response, shortly after the Executive Branch began installing its "interim" U.S.

---

[39] *See, e.g.*, 153 Cong. Rec. S1993-01 (daily ed. Feb. 15, 2007) (statement of Sen. Leahy, Senate cosponsor) ("We learned recently that the Department of Justice has asked several outstanding U.S. attorneys from around the country to resign their positions. . . . We also understand the Attorney General has or is planning to appoint interim replacements for the U.S. attorneys he is removing, raising a potential of avoiding the Senate confirmation process altogether."); *id.* (statement of Sen. Schumer, Senate cosponsor) (identifying "concerns that politics was involved in several of these firings"); 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Keller) ("[I]t is fairly obvious that the motivation behind this legislation was the dismissal of several U.S. attorneys earlier this year."); *id.* (statement of Rep. Lofgren) (identifying that the Act would address "the dismissal of eight, now nine, U.S. attorneys" and their replacement with interim appointees); *id.* (statement of Rep. Jackson-Lee) (identifying that the Act would address "that after gaining this increased authority to appoint interim United States Attorneys indefinitely, the administration has exploited the provision to fire United States Attorneys for political reasons").

[40] *See, e.g.*, 153 Cong. Rec. S1993-01 (daily ed. Feb. 15, 2007) (statement of Sen. Leahy, Senate cosponsor) (expressing concern that an interim U.S. Attorney for the Eastern District of Arkansas had been named without "an agreement with the two home State Senators"; "Why were home State Senators not consulted in advance?"); 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Sanchez) (expressing concern about an Executive Branch e-mail suggesting that an interim appointment would allow "the Justice Department [to] 'give far less deference to home-State Senators and thereby get (1) our preferred person appointed and (2) do it far faster and more efficiently, at less political cost to the White House.'"); *id.* (statement of Rep. Jackson-Lee) ("The President usually accepts the nominee recommended by the Senator or other official.  This tradition, called 'Senatorial courtesy,' serves as an informal check on the President's appointment power.").

Attorneys, Senators Feinstein and Leahy introduced what would eventually become Section 546(c).[41]

The result was a 120-day limit designed to prevent lengthy use of non-confirmed U.S. Attorneys—the core issue here. As an assortment of recent members of Congress described to the *Giraud* court, "[t]he Act reflected Congress's considered judgment—rooted in the Constitution's separation of powers framework—that the appointment of U.S. Attorneys must be subject to meaningful checks, including the Senate's advice and consent, except in limited circumstances expressly provided by law." *Giraud*, No. 24-cr-768, ECF No. 138-2, at 1 (Proposed Br. of Amici Former Republican Members of Congress) (D.N.J. Aug. 13, 2025). Contemporaneous Congressional analysis likewise identified the time limit would prevent administrations from subverting the Senate's confirmation role beyond the 120-day limit.[42]

Most significantly, drafters also specifically understood their efforts to prevent the Executive Branch from doing precisely what the administration is trying to do here. In particular, in the wake of the 2007 Act's passage, Senator

---

[41] *See* S. 214, 110th Cong. (2007). The bill was eventually passed 94–2 in the Senate and 306–114 in the House as the Preserving United States Attorney Independence Act of 2007.

[42] *See, e.g.*, 153 Cong. Rec. H5553-01 (daily ed. May 22, 2007) (statement of Rep. Conyers, House cosponsor) (identifying that the Act would limit the Executive Branch from "appoint[ing] interim temporary U.S. attorneys without the customary safeguard of Senate confirmation"); *id.* (statement of Rep. Sanchez) ("This would ensure that interim U.S. Attorneys appointed since the purge scheme was hatched are not permitted to serve indefinitely and without Senate confirmation.").

Patrick Leahy (co-sponsor of the Section 546(c) amendment and then-Senate Judiciary Committee Chairman) described the "sequential[]" interim-plus-acting maneuver—like the one at issue here—as an "erroneous" interpretation of the Section 546(c) amendments that "runs afoul of congressional intent and the law":

> Yet, even as we closed one loophole, the administration has been exploiting others to continue to avoid coming to the Senate. Under the guidance of an erroneous opinion of the Justice Department's Office of Legal Counsel, the administration has been naming acting U.S. attorneys and interim U.S. attorneys sequentially. They have used this misguided approach to put somebody in place for 330 days without the advice and consent of the Senate. This approach runs afoul of congressional intent and the law.

153 Cong. Rec. S15227-01 (daily ed. Dec. 12, 2007) (Statement of Sen. Leahy); *accord* Statement of Senator Patrick Leahy to the Senate Judiciary Committee, 2008 WL 189313 (Jan. 22, 2008) (similar, describing an administration's attempted interim-plus-acting maneuver as an "erroneous" use of "the Vacancies Act"). The administration's apparent efforts to accomplish just that here requires judicial scrutiny.

*    *    *

The U.S.-Attorney-specific 120-day limit of Section 546(c) governs over the more general FVRA limits here. Otherwise, the district court's 150-plus-years-old statutory appointment power—and the Senate's constitutional advice-and-consent duty—are rendered insignificant. All that is particularly troubling because Congress enacted Section 546(c) to address just this sort of "mischief." The Court should thus hold that Ms. Chattah's time as U.S. Attorney was capped at 120 days under Section 546(c), despite the administration's invocation of Section 3345.

1

### C.    The Appointments Clause requires an interim or acting U.S. Attorney to be Senate-confirmed.

If the Court concludes that Ms. Chattah's ongoing service as acting

U.S. Attorney complies with the governing statutes, it will be ratifying a vacancy

scheme in which the Attorney General can designate never-confirmed individuals to

serve as interim or acting U.S. Attorneys potentially in perpetuity.  Such a regime

is incompatible with the Appointments Clause, which requires Senate confirmation

for all principal officers, including individuals serving in a permanent or lengthy

temporary capacity as U.S. Attorneys.

### 1.    U.S. Attorneys are principal officers requiring Senate confirmation.

The Supreme Court has historically offered differing modes of analysis for

distinguishing between principal and inferior officers.  Under any of these

articulations, U.S. Attorneys are principal officers who must be appointed by the

President and confirmed by the Senate.  U.S. Const. art. II, § 2, cl. 2.[43]  The same

requirement applies to temporary U.S. Attorneys in the circumstances at issue

here, as described in the next section below.

The Supreme Court addressed the distinction between principal and inferior

officers in *Morrison v. Olson*, 487 U.S. 654 (1988), and in *Edmond v. United States*,

520 U.S. 651 (1997).  Four factors supported the inferior-officer status conclusion in

*Morrison*: "that the independent counsel was subject to removal by a higher officer

---

[43] The Supreme Court has never directly addressed this question.  Dicta in *Myers v. United States* suggested that U.S. Attorneys are inferior officers, but the issue was not before the Court in that case concerning a postmaster's removal.  272 U.S. 52, 159 (1926).

(the Attorney General), that she performed only limited duties, that her jurisdiction was narrow, and that her tenure was limited." *Edmond*, 520 U.S. at 661 (citing *Morrison*, 487 U.S. at 671–72). Each of those factors cuts the other way here. U.S. Attorneys are removable only by the President, not the Attorney General. 28 U.S.C. § 541(c). Their sweeping duties include "prosecut[ing] all offenses against the United States," *id.* § 547(1), and litigating "all civil actions, suits or proceedings in which the United States is concerned," *id.* § 547(2). They serve as "the chief federal law enforcement official for the judicial district," *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) (citing *id.* §§ 541, 547)—here, that jurisdiction covers an entire state and its population of over 3 million people. Their tenure is not limited to specific matters or tasks, and their four-year terms continue indefinitely until a "successor is appointed and qualifies." 28 U.S.C. § 541(b).

*Edmond* clarified that *Morrison*'s factors did not constitute a "definitive test." 520 U.S. at 661. But many of the factors emphasized in *Edmond* are likewise absent as to U.S. Attorneys. No Senate-confirmed officer (like the Attorney General) exercises the "powerful tool for control" that is removal from office. *Id.* at 664. And U.S. Attorneys routinely and unilaterally "render a final decision on behalf of the United States," *id.* at 665, for example, by exercising "plenary authority with regard to federal criminal matters" "within" their districts, and through "authorization[] to take all necessary steps to protect the interests of the

United States" "in a great many instances" of civil litigation, *see* U.S. Dep't of Just., Just. Manual §§ 4-1.300, 9-2.001.[44]

The fact that the Attorney General supervises the work of U.S. Attorneys in some respects does not defeat their status as principal officers. Even extensive supervision and oversight by a Senate-confirmed official cannot render supervisees inferior if they exercise significant and binding executive authority on their own. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 16–17 (2021). In finding an Appointments Clause problem with respect to Administrative Patent Judges, the Supreme Court explained, "In all the ways that matter to the parties who appear before the [Patent Trial and Appeal Board], the buck stops with the APJs, not with the Secretary or Director." *Id.* at 17; *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1339 (D.C. Cir. 2012) ("We find that, given the [Copyright Royalty Judges'] nonremovability and the finality of their decisions . . . the Librarian's and Register's supervision functions still fall far short of the kind that would render the CRJs inferior officers."). So, too, with U.S. Attorneys. For the mine-run of defendants, the local U.S. Attorney's Office initiates the prosecution, controls dismissal, and negotiates binding plea agreements without approval or review by Washington, D.C. The buck stops with them—not the Attorney General.

*Arthrex* demonstrates why the Ninth Circuit previously erred in concluding that U.S. Attorneys are inferior officers. *See Gantt*, 194 F.3d at 999–1000. The

---

[44] Available at https://www.justice.gov/jm/jm-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals#9-2.001.

1   *Gantt* panel relied on the Attorney General's statutory authority to reassign cases,

2   set salaries, and approve reimbursements. *Id.* At the same time, without any

3   reasoning, it brushed aside a "significant statutory limit on the Attorney General's

4   supervision of United States Attorneys," i.e., "Congress' decision to vest

5   appointment and removal power in the President." *Id.* at 1000. *Arthrex* squarely

6   undermined *Gantt*'s analysis. The Administrative Patent Judges in *Arthrex* were

7   subject to comprehensive administrative supervision and the threat of reassignment

8   by superior officers, but they were not removable by the Secretary of Commerce at-

9   will. 594 U.S. at 15–17. That supervision did not cure the Appointments Clause

10  problem in *Arthrex*, and it does not do so here. Because *Gantt* is "clearly

11  irreconcilable with" *Arthrex*, this Court is bound by the latter and should "reject

12  [*Gantt*] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900

13  (9th Cir. 2003) (en banc).

### 2.  Temporary U.S. Attorneys serving lengthy terms are principal officers requiring Senate confirmation.

15          Ms. Chattah's designation as an interim or acting U.S. Attorney does not

16  solve the constitutional problem. Unbounded by the time limitations imposed by

17  Congress, the administration may view Ms. Chattah's service as temporary in name

18  only—so her service therefore requires Senate confirmation.

19          Courts have historically conferred inferior-officer status on individuals

20  designated to serve temporarily in roles that would otherwise be categorized as

21  principal officers. *See, e.g.*, *United States v. Eaton*, 169 U.S. 331, 343–44 (1898)

1    (acting Consul General); *Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562, 569–74 (6th

2    Cir. 2022) (acting Federal Housing Finance Agency Director).

3        But that principle has always presumed compliance with the significant

4    limitations imposed by Congress on temporary service.  Officials acting on a

5    temporary basis are inferior when they serve "for a limited time, and under special

6    and temporary conditions."  *Eaton*, 169 U.S. at 343.  In *Rop*, the Sixth Circuit

7    recognized "concerns that a President could abuse [a vacancy] provision by

8    unilaterally firing the [Federal Housing Finance Agency] Director and indefinitely

9    replacing him with an Acting Director, with no intent of ever seeking the advice and

10   consent of the Senate."  50 F.4th at 571.  Those concerns were "alleviate[d]" because

11   Congress can set limits on the President's ability to fill vacancies, including by

12   restricting the circumstances in which the vacancy can be filled and by setting a

13   time limit on the acting official's service.  *Id.*; *accord id.* at 585 (Thapar, J.,

14   concurring in part and dissenting in part) (rejecting the proposition that an acting

15   official can constitutionally "perform every function of his office indefinitely, with no

16   end in sight" and "limited only by the President's inclination to appoint a

17   successor").

18       The government's current approach to designating temporary

19   U.S. Attorneys—potentially in perpetuity—carries insufficient limitations and

20   therefore violates the Appointments Clause.  As Justice Thomas has explained,

21   there is "nothing 'special and temporary'" about" indefinite acting service in a

22   principal-officer role, and "the structural protections of the Appointments Clause"

23   cannot "be avoided based on such trivial distinctions" like merely labeling someone

42

an acting official. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 313 n.1 (2017) (Thomas, J., concurring).

The Court can and should resolve this motion based on the statutory arguments set out above. But if it concludes that Ms. Chattah's acting service complies with the governing statutes as a technical matter, the Constitution provides a backstop, and the Court should reject Ms. Chattah's continued service as incompatible with the Appointments Clause. At a minimum, it should resolve the statutory arguments in the defense's favor to avoid these substantial constitutional concerns.

## II. The appropriate remedy is to dismiss the indictment and for the judges of this district to select an interim U.S. Attorney.

Because Ms. Chattah is not validly serving as the acting U.S. Attorney, the Court should apply an appropriate remedy. *Cf. Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.") (cleaned up). The Court should dismiss the indictment with or without prejudice. Alternatively, it should disqualify Ms. Chattah from service as acting U.S. Attorney, along with any attorneys acting under her direction. Finally, the judges of this district should then select an interim U.S. Attorney under Section 546(d).

### A. The Court should dismiss the indictment or, at a minimum, disqualify Ms. Chattah.

On information and belief, Ms. Chattah purported to approve this prosecution in her capacity as acting U.S. Attorney by authorizing the signing and filing of the indictment on July 30, 2025. Because the signing and filing postdates

43

July 26 (the end of her interim service), the indictment is invalid, and the Court should dismiss it.

U.S. Attorneys control federal prosecutions within their districts.  Under 28 U.S.C. § 547, the U.S. attorney "shall—(1) prosecute all offenses against the United States" in the district.  "The United States Attorney, within his/her district, has plenary authority with regard to federal criminal matters."  U.S. Dep't of Just., Just. Manual § 9-2.001.  "The authority is exercised under the supervision and direction of the Attorney General and his/her delegates."  *Id.*  The U.S. Attorney has a "statutory duty" under Section 547 "to prosecute for all offenses against the United States."  *Id.*  The position carries "the broadest discretion in the exercise of such authority."  *Id.*  "The authority, discretionary power, and responsibilities of the United States Attorney with relation to criminal matters encompass," among other things, "[i]nvestigating suspected or alleged offenses," "[d]eclining prosecution," "[a]uthorizing prosecution," and "[d]etermining the manner of prosecuting and deciding trial related questions."  *Id.*

Because the U.S. Attorney decides whether to authorize a prosecution, and because Ms. Chattah lacked statutory authority to serve as acting U.S. Attorney (and thus authorize the filing of the indictment when it was filed), the indictment in this case is invalid.  The Court should remedy the error by dismissing the indictment.  *See United States v. Trump*, 740 F. Supp. 3d 1245, 1302–04 (S.D. Fla. 2024) (concluding the appropriate remedy for an invalidly appointed prosecutor is to dismiss the indictment).  Among other reasons, dismissal of the indictment is: (1) necessary because the invalid indictment implicates Mr. Garcia's constitutional

right to procedural due process; and (2) appropriate under the court's inherent supervisory authority to dismiss an indictment based on government misconduct. *See, e.g.*, *United States v. Bundy*, 968 F.3d 1019, 1030–31 (9th Cir. 2020) (explaining a court may dismiss an indictment when government misconduct creates "a due-process violation" or implicates a court's "supervisory powers [to] protect[] the integrity of the federal courts").[45]   When an invalidly serving acting U.S. Attorney purports to authorize a prosecution, the defendant is deprived of the "statutory [and] constitutional right" to have a duly appointed or designated (as opposed to an invalid) U.S. Attorney approve the proceedings. *Id.* at 1030.  Dismissal is an appropriate remedy "to deter future illegal conduct," i.e., future illegally authorized prosecutions. *Id.* (cleaned up).

---

[45] In the Ninth Circuit's decision in *Gantt*, the defendant alleged the government's interlocutory appeal was improper because the relevant statute requires the U.S. Attorney personally to certify the appeal, and the defendant maintained the interim U.S. Attorney who certified the appeal was invalidly appointed.  *Gantt* suggested in dicta that even if an interim U.S. Attorney were invalidly appointed, the invalid appointment would not necessarily render an indictment defective because, under Criminal Rule 7(c)(1), an indictment "need only be signed by an 'attorney for the government,'" not the U.S. Attorney specifically. 194 F.3d at 998.  Because this statement was dicta and not germane to the case's resolution, it should be deemed nonbinding.  *See, e.g.*, *Stein v. Kaiser Found. Health Plan, Inc.*, 115 F.4th 1244, 1248–54 (9th Cir. 2024) (en banc) (Forrest, J., concurring) (discussing the nature of dicta).  Binding or not, the case provides scant guidance on the remedial question here, because the defense's argument depends not on the Criminal Rules but on the U.S. Attorney's obligation under 28 U.S.C. § 547 and the Justice Manual to authorize a prosecution.  Nor did *Gantt* involve an argument for dismissal based on a due process violation or a court's inherent supervisory powers.  If the Court concludes *Gantt* is binding with respect to remedy, the defense preserves a challenge to the decision for further review.

45

The dismissal should be with prejudice, not without. *See Bundy*, 968 F.3d at 1031 (recognizing both options can potentially be appropriate).[46]  That remedy is consistent with the remedy in Section 3348(d)(1), which provides that "[a]n action taken by any person who is not" properly serving as an acting officer "in the performance of any function or duty of a vacant office . . . shall have no force or effect."  Under Section 3348(d)(2), such actions "may not be ratified" later.  This "Ratification Bar . . . applies only to those duties of an officer that are nondelegable." *Gonzales*, 107 F.4th at 1073.  The nondelegable duties can be created either by statute or regulation. *See* 5 U.S.C. § 3348(a)(2).  The statutory and regulatory schemes provide no indication the U.S. Attorney may delegate the decision whether to authorize the filing of an indictment to another employee— indeed, the Justice Manual suggests the decision belongs to the U.S. Attorney specifically.  Thus, the Court should dismiss the indictment with prejudice.  Otherwise, if the Court dismissed the indictment without prejudice, and if a duly directed or appointed acting, interim, or permanent U.S. Attorney were to refile the indictment, the refiled indictment would violate the ratification bar.[47]

---

[46] *See also United States v. Williams*, 65 F.R.D. 422, 448 (W.D. Mo. 1974) (dismissing with prejudice because the prosecutors lacked authority to act within the district); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Ohio 1928) (setting aside the indictment for similar reasons but failing to specify whether the remedy was with or without prejudice); *United States v. Rosenthal*, 121 F. 862, 874 (C.C.S.D.N.Y. 1903) (similar).

[47] *Cf. United States v. Harmon*, 833 F.3d 1199, 1204 (9th Cir. 2016) (explaining certain grand jury errors are structural and thus cognizable on appeal after a guilty verdict); *United States v. Plesinski*, 912 F.2d 1033, 1038 (9th Cir.

In addition, dismissal with prejudice is necessary to fully "deter future illegal conduct." *Bundy*, 968 F.3d at 1030 (cleaned up). This remedy is the only appropriate way to deter the administration's improper attempts, spanning multiple districts, to circumvent congressional limits on acting or interim officers. A lesser remedy will insufficiently deter similar conduct in the future.

In the alternative, the Court should dismiss the indictment without prejudice, subject to refiling after authorization by a duly directed or appointed acting, interim, or permanent U.S. Attorney. *See United States v. Peralta-Ramirez*, 83 F. Supp. 2d 263, 271 (D.P.R. 2000) (ordering dismissal without prejudice), *reversed on other grounds, United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000).

If the Court concludes dismissal of the indictment is an unavailable remedy, the Court should at a minimum disqualify Ms. Chattah from participation in or supervision of this case. *See Giraud*, 2025 WL 2416737, at *30; *see also Giraud*, 2025 WL 2196794, at *7–11. The Court should also disqualify any attorneys acting under her direction. *See Giraud*, 2025 WL 2416737, at *30; *see also Giraud*, 2025 WL 2196794 at *9–11 (concluding that if Assistant U.S. Attorneys in the district

---

1990) (concluding the mere presence of an unauthorized prosecutor at a grand jury proceeding did not require dismissal of the indictment because the individual's "presence as an observer" did not "substantially influence[] the grand jury's decision to indict him") (cleaned up); *cf. also SW General*, 796 F.3d at 78 (explaining the acting officer who authorized a labor complaint was serving invalidly; noting the petitioner's argument that the proceedings under the complaint were therefore invalid; stating, "[i]f the violation had occurred in the typical federal office, we might agree" with the petitioner's argument; but noting the ratification bar exempts the labor board); *SW General*, 580 U.S. at 298 n.2 (explaining there was no request for certiorari on the remedial question); *Hooks*, 816 F.3d at 564 (noting the parties agreed the proper remedy was to dismiss the labor board complaint despite the exemption provision).

were, as a matter of fact, taking direction from the invalidly appointed acting U.S. Attorney as opposed to the Attorney General, disqualification would be appropriate).  The proceedings in this case should then be stayed until a proper acting, interim, or permanent U.S. Attorney is serving in this district.  In that event, the defense would anticipate filing a motion to reopen detention under 18 U.S.C. § 3142(f).

**B.    The judges of this district should select an interim U.S. Attorney.**

As explained above, Ms. Chattah is not properly serving as acting U.S. Attorney.  The Court therefore retains authority under Section 546(d) to appoint a new interim U.S. Attorney for the district.

Ms. Chattah's appointment as interim U.S. Attorney expired on or about July 26, 2025, and there is not a proper acting or permanent U.S. Attorney serving in the position, so the vacancy created by Mr. Frierson's resignation remains unfilled.

Assuming Ms. Chattah term instead expired on or about July 30, the same conclusion follows.  While Ms. Chattah purported to resign as interim U.S. Attorney on July 28, her resignation was not a bona fide resignation as explained above, so it failed to prevent the expiration of her tenure under the statute.  Even if her resignation were timely and bona fide, Section 546(d) should be understood to apply when an interim officer resigns shortly before the expiration of the term. Otherwise, the administration could avoid the provision entirely, through the simple expediency of indefinitely stacking successive interim appointments, with the interim appointees repeatedly resigning on or about day 119 of their

appointment and with the administration reappointing them (or someone else) thereafter.  This interpretation would render subsection (d) superfluous, *see Giraud*, 2025 WL 2416737, at *10–12, so the Court should avoid that reading of the statute.[48]

Because Ms. Chattah's period as interim U.S. Attorney has expired, the judges of this district should exercise their authority to appoint a new interim U.S. Attorney.

---

[48] Then-Deputy Assistant Attorney General Samuel A. Alito took the position in a memorandum for the Office of Legal Counsel that Section 546 allows the administration only a single appointment period.  The Attorney General cannot "make another appointment . . . after the expiration of the 120-day period.  The statutory plan discloses a Congressional purpose that after the expiration of the 120-day period further interim appointments are to be made by the court rather than by the Attorney General."  *United States v. Pina*, No. 25-cr-436, ECF No. 61-1 at 4 (D.N.J. Aug. 14, 2025).

## CONCLUSION

The Court should dismiss the indictment with prejudice; dismiss the indictment without prejudice; or disqualify Ms. Chattah and any attorneys acting under her direction.

**Dated**: August 26, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Jeremy C. Baron*
Jeremy C. Baron
Assistant Federal Public Defender

*/s/ Heidi Ojeda*
Heidi Ojeda
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
Sean A. McClelland
Assistant Federal Public Defender